**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CRIMINAL ACTION** |
| | : | **NO.  11-160-1** |
| **DENNIS GLICK,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**Tucker, J.**                                                    **January __ , 2012**

Presently before the Court is Defendant's Motion for Acquittal, or in the Alternative, a New Trial (Doc. 71), the Government's Opposition in response thereto (Docs. 90-96), and Defendant's Reply to the Government's Opposition (Doc.104). For the reasons set forth herein, the Court will deny Defendant's Motion.

**I.      FACTUAL BACKGROUND**

After a five-day trial before this Court, on October 11, 2011, a jury returned a guilty verdict against Defendant, Dennis Glick ("Glick") as to all five counts of his Indictment. Count One of the Indictment charged Defendant with corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue laws in violation of 26 U.S.C. § 7212(a). Counts Two through Five charged the Defendant with aiding or assisting in the preparation of false or fraudulent tax returns in violation of 26 U.S.C. § 7206(2). The Government alleged that Defendant Glick was a certified public accountant ("CPA") who, while working for the Felix

-1-

family and their companies, particularly United Professional Plans, Incorporated ("UPPI"), falsified their individual income tax returns and then lied to federal agents about the falsification on two occasions.

UPPI was an "S" Corporation in which corporate income and losses pass through to the corporate owners, who must report corporate income and losses on their personal income tax returns. Dr. Paul and Jonathon Felix shared ownership of UPPI until Dr. Felix's death in November 2000, at which point Dr. Felix's ownership transferred to his wife, Marion Felix.  The Government alleged that Jonathon Felix ("Felix"), from the mid-1990's to 2003, took large amounts of money from UPPI for personal use, but did not report this money to the Internal Revenue Service ("IRS") as taxable income. The Government also alleged that Defendant was aware of Jonathon Felix's actions. Upon a request to prepare Jonathon Felix's delinquent tax returns, Defendant was unable to acquire sufficient information to prepare the returns, but included a "management fee" in amounts that under-reported the actual amount of funds that Jonathon Felix was removing from UPPI for personal use. Finally, the Government alleged that Defendant prepared Dr. Paul and Marion Felix's tax returns, which contained flow-through income figures from UPPI, even though Defendant was unable to prepare UPPI's tax returns. Presently before the Court is Defendant's Motion for Acquittal, or in the Alternative, a New Trial.

## II.    DISCUSSION

### A.    Motion for Acquittal

Defendant has not presented sufficient grounds for granting his Motion for Acquittal. A defendant bears an "extremely high" burden when challenging the sufficiency of the evidence

supporting a jury verdict. <u>United States v. Iglesias</u>, 535 F.3d 150, 155 (3d Cir. 2008) (quoting <u>United State v. Lore</u>, 430 F.3d 190, 203-04 (3d Cir. 2005). In deciding on a motion for judgment of acquittal made pursuant to Fed. R. Crim. P. 29, a district court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilty beyond a reasonable doubt based on the available evidence." <u>United States v. Brodie</u>, 403 F.3d 123, 133 (3d Cir. 2005) (quoting <u>United States v. Smith</u>, 294 F.3d 473, 476 (3d Cir. 2002). The court's review "must examine the totality of the evidence, both direct and circumstantial," <u>United States v. Gambone</u>, 314 F.3d 163, 170 (3d Cir. 2003), and "[t]he court is required to 'draw all reasonable inferences in favor of the jury's verdict,'" <u>Smith</u>, 294 F.3d at 476 (quoting <u>United States v. Anderskow</u>, 88 F.3d 245, 251 (3d Cir. 1996). "A finding of insufficiency should be 'confined to cases where the prosecution's failure is clear.'" <u>Brodie</u>, 403 F.3d at 133 (quoting <u>Smith</u>, 294 F.3d at 477). Moreover, "[c]ourts must be ever vigilant in the context of FED. R. CRIM. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." <u>Id.</u>  In evaluating a motion for acquittal, the court may consider the "inferences" that arise from the government's evidence. <u>Brodie</u>, 403 F.3d at 149. It is the "court's obligation in the context of a Fed. R. Crim. P. 29 . . . to ensure that any inferences arising from circumstantial evidence are reasonable." <u>Id.</u> at 154. The "government need not conclusively eliminate every other possibility before the jury may reasonably infer that a defendant was guilty." <u>United States v. Carbo</u>, 572 F.3d 112, 118 (3d Cir. 2009).

Defendant Glick bases his Motion for Acquittal on the grounds that the Government failed to establish beyond a reasonable doubt that Defendant acted willfully as required for a

conviction under 26 U.S.C. §7206(2), or corruptly as required for a conviction under 26 U.S.C. § 7212(a).

### 1.    The Government Presented Sufficient Evidence for the Jury to Reasonably Infer that Defendant Acted Willfully

The Government presented evidence sufficient to permit a reasonable juror to find beyond a reasonable doubt that Defendant acted willfully. Willfulness, in the criminal tax context is defined as a "voluntary, intentional violation of a known legal duty." Cheek v. United States, 498 U.S. 192, 201 (1991).  The Government's burden of proving knowledge of a known legal duty "requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good faith belief that he was not violating any of the provisions of the tax laws." Id. at 202; see also United States v. Ringwalt, 213 F. Supp. 2d 499 (3d Cir. 2002). The Government may prove willfulness through direct or circumstantial evidence. Ringwalt, 213 F. Supp. 2d at 504. All that is required is "some evidence from which a jury could infer an intent to mislead or conceal beyond mere failure to pay assessed taxes." Id. (quoting United States v. McGill, 964 F.2d 222, 237-38 (3d Cir. 1992)). Defendant argues that "at best" the evidence demonstrated that he was "negligent, mistaken, or careless" in putting down an estimated "management fee" on Jonathan Felix's delinquent returns in an effort to increase Felix's tax liability. In turn, Defendant argues that because such negligence or good faith negates a finding of willfulness, the Government failed to fulfill its burden of proving beyond a reasonable doubt that Defendant Glick acted willfully.

The Court agrees with the Government that a reasonable juror, upon examining the totality of the evidence, could have found beyond a reasonable doubt that Defendant Glick acted

willfully. At trial, the Government presented evidence that Defendant Glick was well aware of his obligations as a tax preparer. Glick had thirty years of experience as a certified public accountant ("CPA"). The Government also presented evidence that Glick was aware that UPPI was an S-corporation, which required any taxable income to flow through from UPPI to its shareholders, Jonathan Felix and Dr. Paul Felix. The Government also presented testimony that Defendant Glick noticed $1 million of shareholder loans to Jonathon Felix from UPPI recorded in the UPPI books, and informed Felix that he should be being taxed for that income. Glick also reported to IRS agents that he had discovered that Felix had been charging personal expenditures to UPPI corporate credit cards, as well as writing UPPI checks to himself. Several witnesses indicated that Defendant Glick could not get the information he required to properly prepare Felix's tax returns. In addition, the evidence revealed that Defendant Glick, a CPA with thirty years of experience, fabricated the management fees on Felix's tax returns. And finally, the evidence also revealed that Defendant Glick lied twice to IRS investigators regarding the source of the management fee. See Brodie, 403 F.3d at 157 (holding that concealment leads to a reasonable inference of past wrongdoing); Ringwalt, 213 F. Supp. 2d at 512 (citing United States v. Bishop, 264 F.3d 535, 550 (5th Cir. 2001) ("False explanations or false exculpatory statements offered by defendants for prior fraudulent conduct is evidence of willfulness in criminal tax cases.") .

     Viewed in the light most favorable to the Government, this evidence was sufficient for a rational factfinder to infer that Defendant Glick acted willfully in preparing false and fraudulent tax returns -- that is that Defendant was aware of his duty, and intentionally violated that duty. Defendant relies on the fact that he merely acted negligently, or acted in good faith. However,

given the evidence -- specifically Defendant's knowledge of Felix's exorbitant use of corporate funds for personal expenditures, it was reasonable for the jury to infer that the small amount of the management fees which Defendant calculated, in comparison to Felix's actual spending, was not motivated by good faith on the part of Defendant Glick.

> **2.    The Government Presented Sufficient Evidence for the Jury to Reasonably Infer that Defendant Glick Acted Corruptly**

The Government presented sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that Defendant acted corruptly. The crime of corruptly endeavoring to impede the administration of the Internal Revenue laws in violation of 26 U.S.C. § 7212(a) requires that the defendant: (1) knowingly and deliberately made an effort; (2) with the intent to secure an unlawful advantage or benefit either for himself or for another; and (3) that such effort has a reasonable tendency to hinder or prevent the IRS's efforts to collect, assess, and determine the tax liabilities of individuals and companies." United States v. Crim, 561 F. Supp. 2d 530, 532 (E.D. Pa. 2008).  Defendant disputes that the Government proved the second prong beyond a reasonable doubt, that is, that the Defendant acted corruptly -- with an intent to secure an unlawful advantage or benefit either for himself or for another.

Defendant argues that the evidence at trial demonstrated that Glick deeply disliked Jonathon Felix, and therefore, Glick did not act as he did in order to secure a benefit for Felix. Moreover, the evidence only demonstrated that Defendant received $285.71 per return that he prepared for Felix, and therefore, his actions secured no substantial benefit for himself. The Government, on the other hand argues that the evidence demonstrated that Defendant's conduct was aimed at obtaining an unlawful tax advantage for Paul and Marion Felix, for Jonathon Felix,

and for himself. First, the Government argues that the evidence demonstrated that Defendant

prepared Paul and Marion Felix's 1998-2001 tax returns without sufficient information to

calculate those figures. Defendant's acts provided Dr. Paul and Marion Felix with an unlawful

advantage in that they were able to avoid properly reporting their income and losses from UPPI.

Second, Defendant prepared Jonathon Felix's 1998-2002 tax returns using fabricated

management fees instead of UPPI income and loss information, enabling Felix to avoid hundreds

of thousands of dollars in tax liability. Third, the evidence demonstrated that Defendant twice

lied to IRS agents regarding the source of the management fees, thus obtaining an unlawful

advantage or benefit for himself.

      The Government presented sufficient evidence at trial from which a reasonable juror

could infer that Defendant acted corruptly. The Court agrees with the Government's contention

that the evidence did not so clearly demonstrate Defendant's dislike for Jonathon Felix. The

testimony Defendant relies on merely reveals that Felix was irresponsible in his dealings with

UPPI, which although it may have been frustrating to Defendant, does not support Defendant's

contention that the evidence could have only demonstrated Defendant's deep dislike for Felix.

Moreover, a reasonable juror could have inferred from the evidence that Defendant was aware of

the exorbitant amounts of money that Felix was removing from UPPI for personal use (see supra

Part A(1)), yet did not reflect those amounts when he prepared Felix's tax returns. Based upon

these reasonable inferences, a reasonable jury person could also infer that by failing to report

such amounts, Defendant intended to confer an unlawful advantage or benefit upon Jonathon

Felix. The Court also agrees that the Government presented sufficient evidence from which a

jury could reasonably infer that Defendant fabricated the figures on Dr. Paul and Marion Felix's

tax returns in order to obtain an unlawful advantage for them, his good friends, and that Defendant lied to IRS investigators regarding the source of the management fees with an intent to obtain an unlawful advantage for himself.

Based on the foregoing, and recognizing that a reasonable, non-criminal inference which may be drawn from the evidence will not negate an equally reasonable but criminal inference which may also be drawn from the evidence, Gov't of Virgin Islands v. Harris, 938 F.2d 401, 416 (3d Cir. 1991), Defendant's motion for acquittal is denied.

### B.    Motion for a New Trial

Defendant presents no grounds for granting his Rule 33 Motion for a New Trial. Rule 33(a) of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Whether to grant a [Rule] 33 motion lies within the sound discretion of the district court." See United States v. Mastro, 570 F. Supp. 1388, 1390 (E.D. Pa. 1983). In evaluating a Rule 33 motion, a district court does not "view the evidence favorably to the Government, but instead it exercises its own judgment in assessing the Government's case." United States v. Brennan, 326 F.3d 176, 189 (2003). A court may grant a new trial if one of two reasons exists: (1) if after weighing the evidence, the court determines that there has been a miscarriage of justice; or (2) if a trial error had a substantial influence on the verdict. Gov't of the Virgin Islands v. Bedford, 671 F.2d 758, 762 (3d Cir. 1982).

### 1.    The Jury's Verdict Was Supported by the Weight of the Evidence

Defendant is not entitled to a new trial based on the weight of the evidence. "Motions for a new trial based on the weight of the evidence are not favored. Such motions are to be granted

sparingly and only in exceptional cases." United States v. Steptoe, No. 01-429-02, 2003 U.S. Dist. LEXIS 12148, at *6 (E.D. Pa. June 18, 2003) (citing Gov't of the Virgin Islands v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987)).  The Court has considered the evidence, see supra Part A, and has determined that the instant action does not necessitate a new trial in order to avoid a miscarriage of justice. To the contrary, the jury's verdict was supported by the weight of the evidence.

### 2.    There Was No Prosecutorial Misconduct Which Would Warrant a New Trial

Defendant's allegations of prosecutorial misconduct are without merit. "When a defendant seeks a new trial based on allegedly improper arguments of government counsel, the focus of the inquiry is whether any remarks by the prosecutor 'unfairly prejudiced the defendant.'" Ringwalt, 213 F. Supp. 2d at 519. "'[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context.'" Id. at 520 (quoting United States v. Young, 470 U.S. 1, 11 (1985). "In determining prejudice, we consider the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any curative instruction given, and the strength of the evidence supporting the defendant's conviction." Id. at 519. If the court concludes that the comment was improper, it must apply a harmless error standard and consider whether it is "highly probable that the error did not contribute to the verdict." United States v. Mastrangelo, 172 F.3d 288, 297 (3d Cir. 1999).

### a)    AUSA Miller's Comment Does Not Qualify as Prosecutorial Misconduct

AUSA Miller's comment does not present grounds for a finding of prosecutorial

misconduct. Defendant argues that the Assistant United States District Attorneys ("AUSA") who prosecuted his case made two improper comments during their closing arguments. First, in his closing argument, AUSA Miller inferred that Defendant created the management fee in a scheme to help keep Felix's returns under the radar. During his closing, AUSA Miller made the following statement:

> [I]t's reasonable to assume that [Defendant] had some idea of the job of Agent Scafide, what it was that she -- her job and her duties were, and, you know, if we only include a small amount, he's not trying to get a big refund, he doesn't owe a whole lot of money, that these returns might slide through without an audit. Because after all, Agent Scafide was not an auditor. She was not qualified. Her job was to collect money.

(Tr. Day 5, Closing, 21:9-15).

Based on Defendant's experience as an accountant and in dealing with the IRS, it would have been reasonable for the jury to infer that Defendant knew the role of Agent Scafide. However, the Court agrees that a bigger leap was required to infer that because Defendant was aware of Agent Scafide's role, Defendant was merely trying to skirt Felix's returns under the radar by making it so that Felix did not receive a refund. However, the Court does not believe that the leap was an unreasonable one. Moreover, the Court does not find any prosecutorial misconduct because of the context in which the comment was made. Immediately prior to this statement, AUSA Miller told the jury, "This is a case about someone who made up a set of numbers. . . . And you may ask yourself why? Well I can only make inferences. I can suggest inferences. It is up to you to make a final decision." (Tr. Day 5, Closing, 20:17-25). Moreover, AUSA Miller made the argument one time in the context of a five day trial, and both the Government and the Court reiterated to the jury that the final decision, and any inferences

relating to that decision, were solely the jury's to make. Lastly, as noted in Part A above, the Government presented ample evidence to support a finding of Defendant's guilt. Therefore, AUSA Miller's comment does not qualify as prosecutorial misconduct.

> **b)   AUSA Murray's Comment Does Not Qualify as Prosecutorial Misconduct**

AUSA Murray's comments do not qualify as prosecutorial misconduct. Defendant argues that AUSA Murray participated in prosecutorial misconduct when he said to the jury in his closing argument:

> And the IRS obtained from Mr. Glick and his office the books and records from 2001 and 2002, the ones that had all of those loans, the ones that had all of those credit cards. We are not saying that the evidence shows that he had every single record. But he had records showing that large amounts of money were coming out of this company.

(Tr. Day 5, Closing, 66:24-67:5). Defendant argues that this statement led the jury to believe that Defendant had access to all of UPPI's credit card statements and bank statements, which was not at all supported by the evidence. The Government, on the other hand, argues that the argument, which did not contend that Defendant had access to all UPPI records, was supported by the evidence, particularly given the fact that Special Agent McLaughlin testified that Defendant Glick, as a result of a subpoena, provided the Government with UPPI ledger books and some loan statements for the years 1998-1999, and 2001-2003. The ledger books all had entries referencing credit card payments as well as loans to Jonathon Felix.

The Court does not interpret AUSA Murray's statement to mean that Defendant had access to all of UPPI's credit card and loan statements. Rather, the statement, coupled with the evidence at trial, simply referred to the UPPI ledger books which Defendant Glick provided upon

subpoena, which contained entries referring to credit card and loan payments. Moreover, AUSA Murray also told the jury that the Government was not arguing that Defendant had access to "every single record." Therefore, the Court finds no merit in Defendant's argument that AUSA Murray's statement constituted prosecutorial misconduct.

**c)    The Alleged Withholding of Documents and the E-Mail Referenced in Defendant's Motion Do Not Qualify as Prosecutorial Misconduct**

Lastly, the Court notes Defendant's footnote alleging the withholding of documents and the content of an e-mail as grounds for finding prosecutorial misconduct. However, the Court does not agree that any alleged withholding of some UPPI tax returns qualified as prosecutorial misconduct because there is no evidence that these returns were deliberately withheld (particularly since they were provided to Defendant upon request), and Defendant has not alleged the documents would have been helpful to his case. Although Defendant argues that it could have argued for a "spoliation inference" at trial, the Court does not find that this argument would have been material to Defendant's case, particularly because for a spoliation inference to apply, "it must appear that there has been an actual suppression or withholding of the evidence; no unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or when failure to produce it is otherwise properly accounted for." Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 96 (3d Cir. 1983). Additionally, Defendant has not alleged, and the Court does not find, that these documents would fall under the Brady doctrine. See Ringwalt, 213 F. Supp. 2d at 518 (holding that Brady "does not apply to neutral evidence" and finding that the withheld documents at issue were "not material and would not have changed the outcome of the trial"). Moreover, the Court finds Defendant's

-12-

argument that he is merely a pawn in the prosecution of Jonathon Felix unconvincing, particularly in light of the fact that the only support for the proposition is one excerpt of an e-mail chain.

Therefore, as set forth above, Defendant has not presented any prosecutorial misconduct which would be grounds for a new trial.

### 3.      There was No Constructive Amendment of the Indictment

The Government did not constructively amend the Indictment against Defendant. Under the Fifth Amendment to the Constitution, a defendant has the right to be tried only on charges presented in an indictment returned by a grand jury. United States v. Mandell, 722 F. Supp. 1208, 1212 (E.D. Pa. 1989). Conviction of a defendant based upon allegations not presented to the grand jury nor charged in the indictment constitutes a per se violation of the Fifth Amendment, requiring reversal of the conviction. Id. (citing Stirone v. United States, 361 U.S. 212, 217 (1960).

Defendant argues that by arguing in its opening and closing statements that Defendant violated 26 U.S.C. § 7212(a) by entering false and fraudulent income and loss figures on Dr. Paul and Marion Felix's tax returns for 1998-2001, the Government constructively amended the Indictment against Defendant. Defendant argues that this allegation is not contained in the paragraph of the Indictment addressing violations of § 7212(a), Paragraph 9. Paragraph 9 reads:

> From in or about 2000 through in or about 2005, in the Eastern District of
> Pennsylvania and elsewhere, defendant DENNIS GLICK did corruptly endeavor
> to obstruct and impede the due administration of the Internal Revenue laws by,
> among other things, preparing false and fraudulent individual income tax returns
> for Jonathon Felix for tax years 1999 through 2002 and by making
> misrepresentations to criminal law enforcement agents who were investigating the
> falsity of Jonathon Felix's tax returns for these years. More specifically, defendant

> DENNIS GLICK corruptly endeavored to obstruct and impede the Internal
> Revenue laws, by inter alia, committing the acts described in paragraphs 10
> through 25 below.

(Indictment ¶ 9). Paragraph 13 of the Indictment alleges that "throughout this process, defendant

DENNIS GLICK had limited access to the records of UPPI. As a result, for the tax years 1998

through 2002, no corporate income tax returns, Forms 1120S, were filed for UPPI, as required by

law. Despite this, defendant GLICK did prepare individual income tax returns for P.F. and M.F.

for the years 1998 through 2001. These returns reported specific amounts of flow-through

income and losses from UPPI." (Indictment ¶ 13).

The Government's case did not constructively amend the Indictment. Paragraph 9, in

alleging corrupt endeavors, specifically incorporates Paragraphs 10-25 of the Indictment.

Paragraph 13 clearly references Defendant's preparation of Paul and Marion Felix's tax returns

without sufficient information. Moreover, Paragraph 9 alleges that Defendant Glick corruptly

endeavored to impede the due administration of the Internal Revenue laws by, among other

things, preparing false and fraudulent individual income tax returns for Jonathon Felix. Among

these "other things" is Paragraph 13 of the Indictment, referencing the preparation of Paul and

Marion Felix's tax returns. Because the Government has not constructively amended the

Indictment, Defendant's constructive amendment argument does not provide grounds to grant

Defendant's request for a new trial.

## III.    CONCLUSION

For the reasons set forth herein, Defendant's Motion for Acquittal, or, in the Alternative,

a New Trial is denied. An appropriate order follows.

-14-